UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER P. NOREM, ESQ. AND PARENTE & NOREM, P.C., <br><br> Defendants. | No. 17 C 4851 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Before this Court is the Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiffs Trustees of the Chicago Regional Council of Carpenters Welfare Fund ("the Fund") seeking to enjoin Defendants Christopher Norem, Esq. and Parente & Norem, P.C. ("Defendants" or "Norem P.C.") from proceeding with their state court case to recover attorneys' fees from the Fund. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the motion is DENIED. This Court declines to enjoin the Circuit Court of Cook County case 17 CH 7944.

### I. BACKGROUND

In *Carlos Pike v. Premier Transportation, et al.*, 13 CV 8835 (N.D.Il.) (hereafter, *Pike v. Premier*), Pike, represented by Christopher Norem and Parente & Norem,

P.C. (Defendants in this case), brought a personal injury action based on the alleged negligence of a driver of a semi-trailer truck owned by Premier Transportation. In November 2016, a jury returned a verdict in favor of Premier Transportation and against Pike. During jury deliberations, the parties informed the Court that they had entered into a high-low settlement agreement. The jury returned their verdict, triggering the settlement agreement's minimum award. Two months later, Pike moved this Court to strike or reduce the Fund's lien on Pike's settlement award.

The Fund is a self-funded, multiemployer employee welfare benefit plan established under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (the Plan). Pike was a covered individual and a participant in the Plan. (13 C 8835, Dkt. 90). As a precondition for payment of medical expenses related to the accident, Pike executed a Reimbursement Agreement agreeing to (1) grant the Fund an equitable lien on any recovery, (2) waive the common fund doctrine, and (3) assume responsibility for all attorneys' fees incurred in pursuit of his claim. (*Id.* Ex. 2, Reimbursement Agreement). The Fund's lien totaled $165,950.61, which was the amount it had paid Pike in medical and disability benefits for his injuries. (*Id.*, Dkt. 84, Ex. 1).

On March 10, 2017, this Court denied Pike's motion to strike or reduce the lien. (*Id.*, Dkt. 95, hereafter, "March 10 Order"). The Court rejected Pike's arguments that (1) the jury had "diminished" the claim to zero, (2) the Illinois Health Care Services Lien Act precluded the Fund from receiving any reimbursement, and (3) the amount owed to the Fund should be reduced pursuant to Illinois' common fund

doctrine. On March 22, 2017, Norem P.C. mailed a check in the amount of $165,950.61 to the Fund, but advised that they would seek a portion of that money from the Fund for attorneys' fees. On June 6, 2017, Norem P.C. filed a lawsuit in the Circuit Court of Cook County based on the common fund doctrine. (17 CV 4851, Dkt. 5, Ex. 2, Dkt. 20, ¶¶9–10).

The Fund, which filed this action under Section 502(a)(3) of ERISA, now seeks an order, pursuant to Count I of its Complaint, enjoining Norem P.C.'s state court lawsuit under the "relitigation exception" to the Anti-Injunction Act, 28 U.S.C. § 2283. Norem P.C. responds that the relitigation exception does not apply, and they should be able to pursue their claim for attorney's fees in state court.

## II. DISCUSSION

**A. Applicable Law**

A party moving for a temporary restraining order (TRO) or preliminary injunction has the burden to show that without an injunction "it will suffer irreparable harm in the interim period prior to final resolution of its claims,…that traditional legal remedies would be inadequate, [a]nd…that its claim has some likelihood of succeeding on the merits." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008) (internal citations omitted); *see also Long v. Bd. of Educ.*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (standard for issuing a TRO is the same as the standard for preliminary injunction). If the moving party does not demonstrate any one of these three threshold requirements, the court "must deny the injunction." *Girl Scouts of*

*Manitou Council, Inc.*, 549 F.3d at 1086. If the moving party passes the initial threshold phase, the court proceeds to the balancing phase to assess the nature of plaintiff's injury, the likelihood of prevailing at trial, the possible injury to defendant if the injunction is granted, and the public interest. *Id*.

The Anti-Injunction Act, 28 U.S.C. § 2283, provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Act "limits the power of federal courts to enjoin state-court proceedings." *CFE Grp., LLC v. FirstMerit Bank, N.A.*, 809 F.3d 346, 350 (7th Cir. 2015). It "ensures the fundamental constitutional independence of the States,…under which state proceedings should normally be allowed to continue unimpaired by intervention of the lower federal courts. As such, we interpret the Anti-Injunction Act's [three] exceptions narrowly." *Trs. of the Carpenters' Health & Welfare Tr. Fund of St. Louis v. Darr*, 694 F.3d 803, 807 (7th Cir. 2012) (internal citations and quotations omitted). The relitigation exception requires that "the claims or issues, *strictly and narrowly defined*, enjoined from state litigation *actually have been decided* by the district court." *Rutledge v. Scott Chotin, Inc.*, 972 F.2d 820, 825 (7th Cir. 1992) (emphasis added).

A party requesting an injunction based on the relitigation exception must demonstrate "'preclusion is clear beyond peradventure.'" *CFE Grp., LLC*, 809 F.3d at 351 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 299, 131 S. Ct. 2368, 2376 (2011)). The U.S. Supreme Court cautions that it has taken "special care" to keep

the relitigation exception "strict and narrow," and "[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court." *Smith*, 564 U.S. at 306–07 (emphasis in original).

Furthermore, "[t]he fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151 (1988) (emphasis in original). The party seeking an injunction must "still show equitable entitlement to an injunction." *Ramsden v. AgriBank, FCB*, 214 F.3d 865, 869 (7th Cir. 2000). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297, 90 S. Ct. 1739 (1970).

**B. Analysis**

The Fund seeks an injunction based on the assertion that this Court already decided Norem P.C.'s claim for attorney's fees in *Pike v. Premier*. The Fund argues that because Pike did not have standing to pursue an Illinois common fund claim, this Court was essentially ruling on Norem P.C.'s common fund claim when it denied Pike's motion to strike or reduce the Fund's lien in the March 10 Order. The Fund points to arguments made about Pike's "standing" in the briefing on the motion to strike or reduce the lien. But application of the relitigation exception requires that the issue be "presented to *and decided by the federal court*." *Smith*, 564 U.S. at 306 (emphasis added) (internal citations and quotations omitted).

This Court decided only that the common fund doctrine was not available to Pike because, as between Pike and the Fund, Pike's agreement with the Fund explicitly stated that he was responsible for attorney's fees. A narrow reading of the March 10 Order, which is required in this circumstance, is that the ERISA Plan and Agreement that Pike signed preempted *any inquiry into* Illinois' common fund doctrine.[1]

This Court's result is similar to other courts. In *Admin. Comm. of the Wal-Mart Stores, Inc. v. Hummell*, No. 02 C 5691, 2003 U.S. Dist. LEXIS 2798 (N.D. Ill. Feb. 24, 2003) (*aff'd Admin. Comm. of the Wal-Mart Stores, Inc. v. Hummell*, 77 F. App'x 891 (7th Cir. 2003)), the Plan required that the plan beneficiary pay attorney's fees for her personal injury case. The court acknowledged *Bishop v. Burgard,* 198 Ill. 2d 495, 261 Ill. Dec. 733 (2002), in which the Illinois Supreme Court explained that the common fund doctrine is the right of the attorney to sue separate from an ERISA plan. But the court in *Hummell* did not reach the question of the beneficiary's standing to raise the common fund and instead held that ERISA preempted the Illinois common fund doctrine, relying on all the "support for the proposition that state law cannot void explicit and lawful provisions in ERISA plans."[2] 2003 U.S.

---

[1] The Court reached this conclusion in light of *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013) (hereafter, "*McCutchen*"), in which the U.S. Supreme Court held that equitable rules like the common fund doctrine cannot "override the clear terms of a plan." *Id.* at 1543. The Court explained that "[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into" equitable principles. *Id.* at 1546–47 (internal citations and quotations omitted).

[2] One Illinois court has noted tension between *McCutchen* and *Bishop. See Schrempf, Kelly, Napp & Darr, Ltd. v. Carpenters' Health & Welfare Tr. Fund,* 2015 IL App (5th) 130413, ¶ 17, 394 Ill. Dec. 19, 25 (5th Dist. 2015) ("[T]he dicta of *McCutchen* may foreshadow a

Dist. LEXIS 2798 at *11. *See also Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 690 (7th Cir. 2003) (noting in dicta that it was "not readily apparent" that the plaintiff, the plan beneficiary, had standing to raise a common fund claim, but ultimately resting the decision on the finding that the parties' agreement governed and ERISA preempted the Illinois common fund doctrine).

The Fund relies on *Stefanski v. City of Chi.,* 2015 IL App (1st) 132844, 390 Ill. Dec. 314, 28 N.E.3d 967, where the Illinois Appellate Court held that the plaintiff could not maintain a common fund cause of action because the doctrine is "an equitable, quasi-contractual right to attorney fees recognized when there is otherwise no relevant, express contract in place," and the Plan's express terms stated that the City was not responsible for plaintiff's attorney's fees. *Id.* at ¶¶ 17, 21. The court relied on the terms of the parties' agreement to conclude that plaintiff was precluded from relying upon the doctrine to recover any alleged unjust enrichment. *Id.* at ¶¶ 22–31, 37. The court also addressed plaintiff's argument that the Illinois Supreme Court has recognized the right of both a litigant and lawyer to assert a common fund claim. Although the court had "no quibble with this as a general proposition of law," that did not "mean that it is properly applicable in every instance by either a litigant or a lawyer." *Id.* at ¶ 31. The Fund believes *Stefanski* supports the argument that a non-attorney plaintiff lacks "standing" to raise a common fund claim. But that is not a question this Court reached and the

---

different result than our supreme court has pronounced in the past…however, we are unwilling to adopt such an interpretation of *McCutchen* that could lead to the demise of a deeply rooted equitable remedy in Illinois, the common fund doctrine, with respect to self-funded employee benefit plans.").

Fund has not shown that the March 10 Order "clearly precludes a state court decision." *See Smith*, 564 U.S. at 307.

In a closely analogous case, *Trustees of Carpenters Health and Welfare Trust Fund of St. Louis v. Darr,* 694 F.3d 803 (7th Cir. 2012) ("*Darr*"), the Seventh Circuit Court of Appeals refused to enjoin the state court proceeding for attorney's fees based on the common fund doctrine pursuant to the Anti-Injunction Act. At issue in *Darr* was the "expressly authorized" exception of the Anti-Injunction Act, which the Court found did not apply because plan terms about attorney's fees are "a matter tangential to core federal interests [represented by ERISA]." *Id.* at 810. *See also Int'l Union of Operating Eng'rs Local 399 Health & Welfare Fund v. Walsh, Knippen, Pollock & Cetina, Chtd.*, No. 15 C 7143, 2015 U.S. Dist. LEXIS 153976 (N.D. Ill. Nov. 13, 2015) (the "Fund has failed to explain how the terms of the [Plan] can justify an injunction *against [the law firm]*, which is not a party to the plan.... [and the Seventh Circuit has] held that a suit brought under § 502(a)(3) against a non-party to a plan seeking to enjoin that non-party from proceeding against a fund in state court is prohibited by the Anti-Injunction Act. *Darr* remains good law, and this court is bound to honor it.") (emphasis added). The focus in *Darr* and *Walsh* was not the relitigation exception, but those cases, finding that state court common fund litigation by an attorney should not be enjoined pursuant to the Anti-Injunction Act, are persuasive here. And the well-settled principles that the Act should be applied narrowly and any doubts should be resolved in favor the state court's autonomy support a similar outcome here.

Finally, as discussed, because an injunction may issue does not mean it must issue. Here, the Court finds that the equities weigh against an injunction. The Fund argues that it has no adequate legal remedy because it is seeking an equitable remedy under Section 502(a)(3), has no claim for money damages, and only an injunction can stop the "depletion of Fund assets." (Dkt. 5 at 5–6). The Fund also contends that it will suffer irreparable harm because it is likely the state court will not follow this Court's March 10 Order, the Fund will incur additional costs in filing an appeal in state court, and the Fund may not be able to recoup lost funds if the Fund is ordered by the state court to pay Norem P.C. (*Id*. at 6).

The Court is not persuaded that the Fund has established that it has no adequate legal remedy and will suffer irreparable harm. The Seventh Circuit in *Darr* stressed that "[t]he Trustees are not precluded from presenting their federal defense in the state court suit and they may seek damages for whatever injury caused by Darr's suit if the state court rejects their defenses." 694 F.3d at 809–10. Indeed, the Supreme Court has stated that the preclusion question "is usually the bailiwick of" the second court, here, the Illinois court. *See Smith*, 564 U.S. at 307. *See also Ramsden*, 214 F.3d at 872 ("Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from this Court.") (citing *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525 (1986)) and *Heritage Recycling, LLC v. Energy Creates Energy, LLC*, 2015 U.S. Dist. LEXIS 57958, at *11 (S.D. Ind. May 4, 2015) ("The Missouri state court is capable of determining the

issues of res judicata, claim preclusion, issue preclusion, collateral estoppel, or other similar theories that Heritage may seek to employ in the Missouri state court action. If Heritage receives an unsatisfactory decision regarding those defenses, it has recourse through the state appellate channels.").

### III. CONCLUSION

For the reasons discussed above, Plaintiffs Trustees of the Chicago Regional Council of Carpenters Welfare Fund's Motion for Temporary Restraining Order and Preliminary Injunction [4] is **DENIED**.

E N T E R:

Dated: October 16, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge